**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

RECEIVED
BY MAIL

JUN 2 4 2021

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

| | |
|---|---|
| **JOSEPH ANTHONY FAVORS,** | ) **Court File NO:** 21-cv-1495 ECT/HB |
| **PLAINTIFF,** | ) **Case Type:** <u>CIVIL LAWSUIT</u> |
| | ) **Magistrate Judge:** _____ |
| | ) **Judge:** _____ |
| | ) |
| **SYNCHRONY CAPITAL BANK,** | ) **COMPLAINT FOR VIOLATION OF** |
| **V. WOTRUBA (EMPLOYEE)** | ) **EQUAL CREDIT OPPORTUNITY ACT** |
| **DEFENDANTS.** | ) **("ECOA"), <u>15 U.S.C. §1691, ET SEQ</u>.** |

### ***INTRODUCTION***

Plaintiff, <u>JOSEPH ANTHONY FAVORS</u>, (herein after "Plaintiff" or "FAVORS") hereby files this Complaint against Defendant, <u>SYNCHRONY BANK</u> (herein after "Defendant" or "SYNCHRONY BANK") located at P.O. Box 965030, Orlando, Florida, 32896-5030, Phone: 1-800-210-6025, in which FAVORS alleges that SYNCHRONY BANK is liable to him for violation of THE EQUAL CREDIT OPPORTUNITY ACT (ECOA), <u>USCS Chapter 41, Section 1691</u>, Et Seq. In support of his Complaint FAVORS states as follows.

SCANNED

JUN 2 5 2021

U.S. DISTRICT COURT ST. PAUL

23          ***JURISDICTION***

24     Jurisdiction is based upon The Equal Credit Opportunity Act, USCS Chapter 41, Section

25     1691; Section §1988 (Applicability of Statutory and Common Law Rights); Section 28

26     U.S.C. § 1331 (Federal Question); and on the pendent jurisdiction of this Court to

27     entertain claims arising under State law pursuant to 28 U.S.C. § 1367.

28

29          ***VENUE***

30     This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the

31     material events and occurrences giving rise to Plaintiff's cause of action occurred within

32     the State of Minnesota.

33

34          ***ANALYSIS***

35     ***EQUAL CREDIT OPPORTUNITY ACT***

36     The Equal Credit Opportunity Act, USCS Chapter 41, Section 1691, Et Seq, provides in

37     pertinent part that it, *"shall be unlawful for any creditor to discriminate against any*

38     *applicant, with respect to any aspect of a credit transaction --- on the basis of race, color,*

39     *religion, national origin, sex or marital status, or age."* Section 1691e makes any

40     creditor who violates the Act liable to the aggrieved applicant for any actual damages

41     sustained by the applicant individually or as a member of a class.

42

43     A more significant incentive for compliance, however, is found in 1691e which provides,

44     *"[any] creditor . . . who fails to comply with any requirement imposed under this*

45    *subchapter shall 1 be liable to the aggrieved applicant for punitive damages in an*

46    *amount not greater than $10,000 . . . except that in the case of a class action the total*

47    *recovery under this subsection shall not exceed the lesser of $500,000 or 1 per centum of*

48    *the net worth of the creditor."* The federal statute directs the court in determining

49    punitive damages to consider, among other relevant factors, *"the amount of any actual*

50    *damages awarded, the frequency and persistence of failures of compliance by the*

51    *creditor, the resources of the creditor, the number of persons adversely affected [by this*

52    *policy, practice, and procedure], and the extent to which the creditor's failure of*

53    *compliance was intentional."*

54

55    Although the Act has been in force since October of 1975 only one reported case has

56    interpreted its provisions, *Carroll v. Exxon Company, USA*, 434 F. Supp. 557 (E.D. La.

57    1977), and that case does not address the problem of damages under the ECOA.  In the

58    absence of decisional law the court must look to the legislative history and analogous

59    statutes to determine the nature and measure of actual damages flowing from a wrongful

60    denial of credit and to determine what conduct by a defendant will trigger punitive

61    damages.

62

63    The Equal Credit Opportunity Act, USCS Chapter 41, Section 1691(d), Reason for

64    adverse action; procedure applicable; *"adverse action"* defined,  requires the creditor

65    must comply with the following mandates:

66

67    (1) Within thirty days (or such longer reasonable time as specified in regulations of
68        the Bureau for any class of credit transaction) after receipt of a completed
69        application for credit, a creditor shall notify the applicant of its action on the
70        application.

71

72    (2) Each applicant against whom adverse action is taken shall be entitled to a
73        statement of reasons for such action from the creditor. A creditor satisfies this
74        obligation by—

75        (1) Providing statements of reasons **in writing** as a matter of course to
76            applicants against whom adverse action is taken; or

77

78        (2) Giving written notification of adverse action which discloses (i) the
79            applicant's right to a statement of reasons within thirty days after receipt by
80            the creditor of a request made within sixty days after such notification, and
81            (ii) the identity of the person or office from which such statement may be
82            obtained. Such statement may be given orally *if* the written notification
83            advises the applicant of his right to have the statement of reasons confirmed
84            in writing on written request.

85    (3) statement of reasons meets the requirements of this section only if it contains the
86        specific reasons for the adverse action taken.

87

88    (4) Where a creditor has been requested by a third party to make a specific extension

89      of credit directly or indirectly to an applicant, the notification and statement of

90      reasons required by this subsection may be made directly by such creditor, or

91      indirectly through the third party, provided in either case that the identity of the

92      creditor is disclosed.

93

94    (5) The requirements of paragraph (2), (3), or (4) may be satisfied by verbal

95      statements or notifications in the case of any creditor who did not act on more than

96      one hundred and fifty applications during the calendar year preceding the calendar

97      year in which the adverse action is taken, as determined under regulations of the

98      Bureau.

99

100   (6) For purposes of this subsection, the term *"adverse action"* means *"a **denial or**

101      **revocation of credit**, a change in the terms of an existing credit arrangement, or a*

102      *refusal to grant credit in substantially the amount or on substantially the terms*

103      *requested."* Such term does not include a refusal to extend additional credit under

104      an existing credit arrangement where the applicant is delinquent or otherwise in

105      default, or where such additional credit would exceed a previously established

106      credit limit.

107

108

109

### *FACTS AND ALLEGATIONS*

110

111    The undisputed facts before the court show Plaintiff JOSEPH ANTHONY FAVORS

112    applied for a SYNCHRONY BANK *"CareCredit Card"* and was denied credit weeks

113    later.    On April 10, 2021, FAVORS submitted an application for medical credit to pay

114    for prescription and  other glasses he had picked out that costs $601.00.   FAVORS listed

115    income in excess of $1,000 per month and bank references for checking and savings

116    accounts.    He also indicated that he was 59 years of age and had no dependents.   The

117    application form contained blanks for spousal information, but did not indicate that the

118    information was optional.  It also offered the applicant a choice of titles for the

119    addressing of correspondence (Mr., Mrs., Miss, Ms., other) without indicating the

120    selection was non-mandatory.   His application was denied by mail in a letter dated June

121    13, 2021, addressed from Defendant WOTRUBA, made only three (3) weeks later again

122    indicated income in excess of $1,000 per month, and checking and savings accounts.

123

124    All applications for SYNCHRONY BANK Credit Cards are managed and established as

125    follows:   SYNCHRONY BANK's evaluation of a credit application is made utilizing

126    (what they call) *"a sound credit scoring system."*  This system generates a score, which

127    is a result of point values assigned to various items found on an applicant's credit bureau

128    file.  If the score fails to meet certain criteria, the application will be declined.  In addition

129    to the above, the USA  PATRIOT  ACT  requires all creditors, including SYNCHRONY

130    BANK, to verify all applicants' identities.   As part of our normal course of business,

131    SYNCHRONY BANK utilizes external verification tools to help ensure we are not

132   approving unauthorized accounts and are proactively reducing the incidents of identity

133   theft.  Approximately 25% of all applications are automatically accepted or rejected on

134   the basis of this initial scoring. Applications which the computer does not automatically

135   accept or reject are scored *"obtain a credit report."* Once such a report has been obtained

136   the application is either approved or disapproved based upon the information

137   contained therein.

138

139   FAVORS' first application for a SYNCHRONY BANK *"SweetwaterCard"* was

140   immediately approved for a line of credit up to $3,400.00 about two months prior to his

141   second application was applied for and denied.  There had been no adverse changes filed

142   to FAVORS' credit bureau information since his first application for a SYNCHRONY

143   BANK *"SweetwaterCard"* was approved.  In fact, the addition of the SYNCHRONY

144   BANK *"SweetwaterCard"* credit line could have no other effect than an improved credit

145   bureau file, because it added $3,400.00 to his far less total balance due on all his credit

146   cards.

147

148   Thus, these two attempts to obtain a SYNCHRONY BANK credit card shows FAVORS

149   was not denied credit the first time.  However, FAVORS alleges that SYNCHRONY

150   BANK later *wrongfully, willfully and oppressively* denied his application in violation of

151   the Equal Credit Opportunity Act, <u>15 U.S.C. 1691</u> *et seq.*

152

153   FAVORS' Claim is filed under the Equal Credit Opportunity Act, 15 U.S.C. 1691 *et seq.*,

154   [hereinafter cited as ECOA], alleging that FAVORS and the class he claims to represent

155   have been discriminated against / wrongfully denied credit *"on the basis of*

156   *characteristics that have nothing to do with his or her creditworthiness." See, 1976 U.S.*

157   *Code Cong. & Admin. News* at 405.   FAVORS' Complaint prays for instatement of the

158   SYNCHRONY BANK *"CareCredit Card"*   so that he can use it to pay for his

159   prescription glasses (with no annual / monthly fee) actual damages and the statutory

160   maximum punitive damages.

161

162   On April 10, 2021 FAVORS contacted SYNCHRONY BANK to obtain a SYNCHRONY

163   BANK *"CareCredit Card"*  he needed to purchase prescription eyeglass for his new

164   prescription glasses he just pick out at the store, and was directed by the store clerk to

165   seek this means of payment.

166

167   During that contact, the John Doe SYNCHRONY BANK representative person asked

168   FAVORS *"Would you like to apply for the "CareCredit Card"* to pay for the *$601.00*

169   *glasses he had picked out at the store?"*   FAVORS replied,  *"Yes."*

170

171   The John Doe SYNCHRONY BANK representative said to FAVORS  *"Would you like to*

172   *submit your application now for the*   SYNCHRONY BANK *"CareCredit Card?"*

173   FAVORS answered,  *"Yes."*

174

175   The John Doe SYNCHRONY BANK representative asked several question (i.e., for his

176   social security number, mailing address, date of birth, etc.).   FAVORS answered each

177   inquiry with his personal information.

178

179   The John Doe SYNCHRONY BANK representative informed FAVORS of the terms and

180   conditions of the Avant Credit Card being offered to FAVORS (i.e., interest rates, late

181   fees, annual fee, etc.), asking to each term: *"Do you accept these terms?"* FAVORS

182   answered "yes" to each term of the credit card being offered.

183

184    At the end, the John Doe SYNCHRONY BANK representative paused, then asked

185   FAVORS: *"Would you like me to submit your application now?"*   FAVORS replied,

186   *"Yes."*

187

188   Seconds later, the John Doe SYNCHRONY BANK representative informed FAVORS,

189   *"Your application is under review.  We will mail you a decision in a few weeks."*

190

191   On June 13, 2021 Defendant WOTRUBA responded with the aforesaid letter, quoted

192   above, in which she denied the application.

193

194   The reason for the rejection stated by SYNCHRONY BANK Defendant WOTRUBA  in

195   writing was obviously not true, a lie. It made FAVORS blameworthy for the adverse

196   action, not at all due to any fault on SYNCHRONY BANK's part.

197                       ***CLAIMS***

198     **I.**    ***EQUAL CREDIT OPPORTUNITY ACT (ECOA)***

199       ***Actual Damages***

200   Paragraphs 1 through 197 are incorporated herein by reference as though fully set forth.

201

202   Based on the above factual allegations, Defendant SYNCHRONY BANK through its

203   actions, employees, acting in violation of Federal, and Constitutional laws, violated

204   FAVORS'S Federal and Constitutional rights under the Equal Credit Opportunity Act

205   (ECOA), <u>USCS Chapter 41, Section 1691, et seq.</u>, through its *willful, wanton and*

206   *oppressive reckless disregard* resulting in the following State and Federal violations

207   against FAVORS:

208

209   As FAVORS observes, it is always true that if one has the cash, the products can be

210   purchased, without credit. The wrongful denial of which is actionable and for which

211   damages are appropriate redress for the *denial of credit*, not the denial of products and

212   services.

213

214   Credit has an independent worth in the economy. But, precisely because *"[credit] has*

215   *ceased to be a luxury item,"* the United States Congress passed the ECOA to establish

216   *"as clear national policy that no credit applicant shall be denied the credit he or she*

217   *needs and wants* ***on the basis of characteristics that have nothing to do with his or her***

218   *creditworthiness,"* essentially, as alleged in this case against SYNCHRONY BANK.

219   .*See,* 1976 U.S. Code Cong. & Admin. News at 405.

220

221   Certain wrongful denials of credit will have far more onerous consequences than others,

222   and, therefore, will generate far more substantial damages. In rudimentary terms, a home

223   mortgage is more valuable than a medical assistance credit card to make a $600.00 badly

224   needed purchase of eyeglasses. However, the Court is not requested by FAVORS to rule

225   the value of a $600.00 medical credit card is de minimis as a matter of

226   law. **Convenience has some value as does increased purchasing power and**

227   **protection for emergencies.** FAVORS has placed these losses in issue and is entitled to

228   attempt to prove the amount of their worth at trial.

229

230   FAVORS also argues that he may recover compensation for his *"embarrassment,*

231   *humiliation and mental distress"* occasioned by the alleged wrongful denial of credit.

232   His argument likens the ECOA to Title VIII of the Civil Rights Act of 1968, 42 U.S.C.

233   3605, which proscribes discrimination on account of race, color, religion, sex or

234   national origin in loans or other financial assistance. Title VIII, like the ECOA, gives the

235   aggrieved applicant a cause of action for actual and punitive damages, 42 U.S.C. 3612(c),

236   and it has been interpreted to provide compensation for *"embarrassment, humiliation and*

237   *mental distress." See, Smith v. Anchor Building Corp.,* 536 F.2d 231, 236 (8th Cir.

238   1976); *Williams v. Matthews Co.,* 499 F.2d 819, 829 (8th Cir. 1974), *cert. den.* 419 U.S.

239   1021, 1027, 42 L. Ed. 2d 294, 95 S. Ct. 495; *Jeanty v. McKey & Poague, Inc.,* 496 F.2d

240 1119, 1121 (7th Cir. 1974); *Seaton v. Sky Realty Company, Inc.*, 491 F.2d 634, 636 (7th

241 Cir. 1974); *Steele v. Title Realty Co.*, 478 F.2d 380, 384 (10th Cir. 1973).

242

243 The analogy to Title VIII is persuasive since both acts are statutory remedies for denial of

244 Civil Rights. Furthermore, it would be inconsistent with the Congressional purpose of

245 eliminating invidious discrimination to ignore the emotional harm often flowing from it

246 by limiting the aggrieved applicant to out-of-pocket losses. All the same, the Court is not

247 requested by Plaintiff to presume such damages have occurred. Neither the likelihood of

248 such injuries nor the difficulty of proving them is so great as to justify deviation from the

249 rule that compensation will not be provided where damage is not proven. *See, e.g., Carey*

250 *v. Piphus*, 435 U.S. 247, 262, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). FAVORS has

251 raised a genuine issue as to his emotional harm by testimony that he was *"infuriated,*

252 *angry, upset and felt an injustice had been done"* that needs to be rectified.

253

254 The final element of *Actual Damage* which FAVORS claims derives from a wrongful

255 denial of credit is harm to ones *reputation for credit-worthiness.* This kind of injury is,

256 perhaps, the one most logically related to this / a denial of credit. However, as with the

257 alleged mental and emotional injuries, the United States District Court is not requested

258 by FAVORS to presume damages. FAVORS must prove actual injury to his credit

259    reputation (he alleges of points on his credit score), [1]and other damages before he may

260    be compensated in damages.

261

262    Since FAVORS has raised in his Complaint a genuine issue alleging with regard to the

263    harm he suffered from the alleged wrongful denial of credit, any motion to dismiss by

264    SYNCHRONY BANK FAVORS' Claims for actual damages must be denied.

265

266    FAVORS establishes that he suffered *Actual Damages*. FAVORS motivation for his first

267    application was convenience, and increased purchasing power, and protection for

268    emergencies, and an increased credit score, which all have some value. The

269    circumstances resulting in his second application was for the same reasons. FAVORS

270    has raised a genuine issue as to his emotional harm by testimony that he was ***infuriated,***

271    ***angry, upset and felt an injustice had been done*** that needed to be rectified. FAVORS

272    has placed these losses in issue and is entitled to attempt to prove the amount of their

273    worth at trial. FAVORS attempts to demonstrate he had particular need or desire for a

274    SYNCHRONY BANK card.

275

276    ***Punitive Damages***

277    Neither of the SYNCHRONY BANK credit cards applications which FAVORS

278    submitted contained boxes for designation of sex or marital status. FAVORS argues that

279    SYNCHRONY BANK and its' employee, Defendant WOTRUBA knew or should have

---

[1] See, exhibit #3.

280   known based on, but not limited to, their exact same identifying information on file about

281   FAVORS when he applied for the SYNCHRONY BANK *"SweetwaterCard"* and was

282   approved a line of credit up to $3,400 was all the same information (i.e. social security

283   number, age, birth date, and home address).  That fact is indisputable!  Yet, Defendant

284   WOTRUBA lies in the letter and reason for denial, stating a problem with identification,

285   quote:

286   This system generates a score, which is a result of point values assigned to
287   various items found on an applicant's credit bureau file.  If the score fails
288   to meet certain criteria, the application will be declined.  In addition to the
289   above, the USA  PATRIOT  ACT  requires all creditors, including
290   SYNCHRONY BANK, to verify all applicants' identities.
291
292
293   FAVORS' indisputable evidenced based on the obvious facts that: (1)  At that time, the

294   John Doe SYNCHRONY BANK representative told FAVORS that the offer was being

295   denied  based on his credit history they had, it was in good standing with SYNCHRONY

296   BANK where FAVORS has a SYNCHRONY BANK  *"SweetwaterCard"* with a zero

297   balance due, and $3,400 line of unsecured credit available to him;   (2)  On the day

298   FAVORS was denied based in part, too on an alleged inability to verify his *"identity,"*

299   SYNCHRONY BANK had the exact same identifying information on file for Favors for

300   his SYNCHRONY BANK  *"SweetwaterCard"* that all matched the information provided

301   for the SYNCHRONY BANK  *"CareCredit"* Card (i.e., name, address, social security

302   number, age, phone number, etc.);   (3)  And there are other factual allegation that prove

303   *willful* and ***intentional malicious and oppressive***  denial of credit toward FAVORS he

304   will prove with the use of the Discovery processes for this case.   Such as, FAVORS

305   wrote a letter on a date to be disclosed to SYNCHRONY BANK from his home address,

306   when he received an initial denial by mail to from SYNCHRONY BANK for his

307   application. That was easily verified by cross reference to the home address they had on

308   file since they approved FAVORS' first SYNCHRONY BANK *"SweetwaterCard."* And,

309   such as, there is no way anyone checked out that information, then denied FAVORS

310   application based on the written reasons he received.

311

312   SYNCHRONY BANK's inherent *reckless disregard* where they refused to correct their

313   own error after FAVORS wrote a letter to them, informing them of all these facts prior to

314   receiving the reply from Defendant WOTRUBA by matching all the information they had

315   on file about FAVORS to his second application, but instead subjecting FAVORS to

316   *adverse action* / harmful and unjust *negative consequences* in the form of *"revocation of*

317   *credit, a change in the terms of existing credit arrangement, and refusal to grant credit*

318   *in substantially the amount or on substantially the terms requested"), knowing* it resulted

319   from SYNCHRONY BANK's mistake, and in no way on FAVORS part. The reasons

320   explained to FAVORS for the *adverse actions ("identification" and "credit score")* was

321   all in good standing with SYNCHRONY BANK, so that shows the reason for the denial

322   of FAVORS' second application had absolutely nothing to do with his *"creditworthiness"*

323   and was entirely SYNCHRONY BANK and its employee's own error, beyond FAVORS

324   control, knowledge, or actions.

325

326   These undisputed / undisputable facts, FAVORS asserts affirmatively demonstrate that

327   SYNCHRONY BANK acted in the ***"malicious, wanton or oppressive"*** manner necessary

328   to trigger punitive damages.   SYNCHRONY BANK's actions became entirely

329   *"intentional and knowing"* where the John Doe SYNCHRONY BANK representative

330   acknowledge / realized their error and still proceeded to take *adversely actions* / subject

331   FAVORS to *negative consequences* for SYNCHRONY BANK's error.

332

333   Unfortunately, the language of the ECOA regarding punitive damages is somewhat

334   ambiguous.  While the traditional word *"punitive"* is used, one of the factors listed for

335   the court to consider in determining the amount of punitive damages is *"the extent to*

336   *which the creditor's failure of compliance was intentional."*  That language suggests

337   punitive damages might be awarded ***even though the creditor's conduct was not***

338   *"wanton, malicious or oppressive."*

339

340   At the time the ECOA was amended in 1976 and the limit on punitive damages was

341   raised to its present level, the United States House version of the bill proposed to limit

342   punitive damages to *"willful"* violations of the Act or its regulations.  *See, H.R. No. 210,*

343   *94th Cong.,* 1st Sess. 9 (1975).  The United States House-Senate Conference Committee

344   ultimately chose to retain the original language and omitted any reference to willfulness

345   in the final version.  The explanation for this omission, however, may be found in the

346   separate comments of Congresswoman Leonor K. Sullivan, appealed to the United States

347   House     Committee     report     on     the     proposed     United     States     House

348   amendments.  ***Congresswoman Sullivan suggested the "willfully" language should be***

349   ***omitted since it connoted a standard used in criminal rather than civil statutes.***

350

351   Removal of the word *"willfully"* from H.R. 6516 would not open the way to frivolous

352   law suits based on technical violations because other provisions of the legislation require

353   that in successful class actions the court in determining the amount of the award must

354   take into consideration, among other things, *"the extent to which the creditor's failure of*

355   *compliance was **intentional**."*  This is, in any event, a test which the courts would apply

356   in any case involving punitive damages. Requiring that *willfulness* be proved as a

357   condition of collecting punitive damages would mean that the kind of proof generally

358   required in criminal cases would have to be produced in civil actions under this

359   law.  *See,* H.R. No. 210, 94th Cong., 1st Sess. 18 (1975).

360

361   This limited legislative history does not explain whether United States Congress intended

362   to eliminate the traditional threshold requirement that the defendant acted *"maliciously,*

363   *wantonly or oppressively."*   Here, the Parties must agree that the creditor's violation

364   must have been ***intentional*** in the sense that the creditor purposefully denied credit, after

365   giving *"mutual assent"* to the terms of the credit card offered to FAVORS and actually

366   mailing it to FAVORS, and then, knowing their error, still subjected FAVORS to

367   substantial *adverse actions* and *negative consequences*.  Specifically, *"revocation of*

368   *credit," "a change in the terms of existing credit arrangement, and refusal to grant credit*

369   *in substantially the amount or on substantially the terms requested"* of the credit card

370    account.   The Parties must also agree that the creditor, SYNCHRONY BANK, in this

371    case took *adverse actions* against FAVORS *"on the basis of characteristics that have*

372    *nothing to do with his or her creditworthiness,"* as abundantly evident by the FACTS of

373    this case against SYNCHRONY BANK.  *See,* 1976 U.S. *Code Cong. & Admin. News* at

374    405.

375

376    The most sensible reading of the Statute adopts something of a middle course.  Since

377    *punitive damages* are awarded to punish the defendant and to serve as an example or

378    warning to others not to engage in the same conduct, they are only justified when the

379    defendant has committed a particularly blameworthy act.  Consistent with this principle,

380    however, United States Congress might have intended to punish creditors who acted in

381    *reckless disregard* of the requirements of the law, even though they did not have in mind

382    the specific purpose of discriminating on unlawful grounds.  If this interpretation is

383    adopted the language   *"the extent to which the creditor's failure of compliance was*

384    *intentional"* is read as a reference to the specific intent to discriminate on prohibited

385    grounds.  Designation of the damages as *"punitive,"* on the other hand, implies a

386    threshold requirement that the defendant has acted in reckless disregard of the

387    requirements of the law.

388

389    As noted above, FAVORS maintains he is entitled to judgment for punitive damages

390    because SYNCHRONY BANK subjected him to *reckless disregard* consisting of

391    *"revocation of credit, a change in the terms of existing credit arrangement, or refusal to*

392    *grant credit in substantially the amount or on substantially the terms requested" [when*

393    *SYNCHRONY BANK* denied his application for a SYNCHRONY BANK *"CareCredit"*

394    card *"on the basis of characteristics that have nothing to do with his or her*

395    *creditworthiness"* (based on, but not limited to, the evidence that FAVORS' credit

396    history was unchanged between his first application (approved) and second one,

397    including all identification. For this reason, SYNCHRONY BANK's claim of innocence

398    is incomplete.

399

400    FAVORS claims that SYNCHRONY BANK's *willfulness* was not ignorant of their

401    *reckless disregard* when they subjected FAVORS to *refusal to grant credit in*

402    *substantially the amount or on substantially the terms requested" "on the basis of*

403    *characteristics that have nothing to do with his or her creditworthiness,"* as described

404    abundantly above herein (based on undisputed facts!).

405

406    As is evident from the preceding discussion, resolution of the *punitive damage* issue

407    necessarily <u>implicates the merits of the entire controversy</u>. Whether the Defendant acted

408    in reckless disregard of the requirements of the law cannot be determined when the issue

409    of whether the Defendant even violated the law is hotly disputed in this case. If the

410    underlying federal Statute were well defined by precedent a preliminary determination

411    might be realistic; but, where there are virtually no reported cases interpreting the ECOA

412    such a determination is premature. SYNCHRONY BANK's <u>state of mind is relevant to</u>

413    <u>the question of *punitive damages* and preliminary determination is inappropriate where</u>

414   intent is a material issue.   *See, Moore's Federal Practice Para.* 56.17 [41.-1].  Since

415   there are triable issues of fact regarding Defendant's conduct and any state of mind that

416   might be inferred therefrom FAVORS is entitled to proceed to trial on his claim for

417   punitive damages.

418

419   Standard civil jury instructions advise the jury that *punitive damages* may be awarded if

420   damage to the plaintiff was *"maliciously, or wantonly, or oppressively"* done, and define

421   the key words as follows:

422

423   An act or a failure to act is ***"maliciously"*** done, if prompted or accompanied by ill will,

424   or spite, or grudge, either toward the injured person individually, or toward all persons in

425   one or more groups or categories of which the injured person is a member.

426

427   An act or a failure to act is ***"wantonly"*** done, if done in reckless or callous disregard of,

428   or indifference to, the rights of one or more persons, including the injured person.

429

430   An act or a failure to act is ***"oppressively"*** done, if done in a way or manner which

431   injures, or damages, or otherwise violates the rights of another person with unnecessary

432   harshness or severity, as by misuse or abuse of authority or power, or by taking

433   advantage of some weakness, or disability, or misfortune of another person.  *See,* Devitt

434   & Blackmar, Federal Jury Practice and Instructions 85.11 (3rd Ed. 1977).

435

436     Here, FAVORS alleges that SYNCHRONY BANK's actions or failure to act was

437     *"wantonly"* done, with *reckless or callous disregard* of, or *indifference* to, the rights of

438     one or more persons, including the injured person [FAVORS]; and was *"oppressively"*

439     done, in a way or manner which injures, or damages, or otherwise violates the rights of

440     another person with unnecessary harshness or severity, as by misuse or abuse of authority

441     or power, or by taking advantage of some weakness, or disability, or misfortune of

442     another person [FAVORS] --- and that SYNCHRONY BANK attempts to be deceitful by

443     deliberately and *willfully* misleading and falsifying / directly lying to conceal their

444     particular blameworthy wrongful *adverse actions* against FAVORS by omitting of facts.

445

446     Here, FAVORS alleges that SYNCHRONY BANK clearly acted with *wanton and*

447     *oppressive intent* to lie and conceal the truth behind their adverse actions which they were

448     at fault.

449

450     FAVORS never changed any personal identifying information, or used a different name,

451     address, social security number, phone number, birth date, etc. on his applications, which

452     SYNCHRONY BANK and their employees new prior to refusing/ denying FAVORS

453     application based on an alleged change in that information. But SYNCHRONY BANK

454     refused to correct their own error by matching that information they had with FAVORS

455     second application without subjecting FAVORS to *adverse actions,* where

456     SYNCHRONY BANK *refusal to grant credit in substantially the amount or on*

457     *substantially the terms requested" "on the basis of characteristics that have nothing to*

458   *do with his or her creditworthiness,"* as described abundantly above herein (based on

459   undisputed facts!),   which caused FAVORS to be very *"**infuriated, angry, upset and felt***

460   ***an injustice had been done**"* that needs to be rectified.

461

462   FAVORS contends, he was further *"**infuriated, angry, upset and felt an injustice had***

463   ***been done**"* that needed to be rectified when he stated he wanted the credit card to

464   purchase needed prescription eyeglasses he had just got a eye exam, and the John Doe

465   SYNCHRONY BANK representative refused to correct their error.

466

467   FAVORS contends, the undisputed facts demonstrate SYNCHRONY BANK' *willful,*

468   *oppressive adverse actions* where the reason they stated for taking *adverse actions*

469   against FAVORS was obviously for no fault of his by omition of that fact to justify

470   wrong in violation of the Equal Credit Opportunity Act (ECOA), <u>USCS Chapter 41,</u>

471   <u>Section 1691(d)</u>, *"**Reason for adverse action.**"*

472

473   ***REQUEST FOR RELIEF***

474      ***a) Equal Credit Opportunity Act***

475   Pursuant to Equal Credit Opportunity Act, <u>USCS Chapter 41, Section 1691(e)</u>, any

476   creditor who violates the *Act* is liable to the aggrieved applicant for any *Actual Damages*

477   sustained by the applicant individually or as a member of a class.

478

479   At this point FAVORS established that he suffered two *Actual Damages*.   FAVORS

480   motivation for his first application was convenience, and increased purchasing power,

481   and protection for emergencies, and an increased credit score, <u>which all have some value</u>.

482   The circumstances resulting in his second application was for the same reasons.   First

483   (*actual damages*), FAVORS has raised a genuine issue as to his mental and emotional

484   harm by testimony that he was *"infuriated, angry, upset and felt an injustice had been*

485   *done"* that needs to be rectified.

486

487   Second (*actual damages*),  FAVORS has raised a genuine issue as to his *Actual Damages*

488   by testimony that he was subjected to wrongful *"refusal to grant credit in substantially*

489   *the amount or on substantially the terms requested"* *"on the basis of characteristics that*

490   *have nothing to do with his or her creditworthiness,"* with *deliberate disregard* that

491   needs to be rectified.   FAVORS has placed these losses in issue and is entitled to attempt

492   to prove the amount of their worth at trial with a jury.   FAVORS attempts to demonstrate

493   he had particular *need or desire* for a SYNCHRONY BANK cards.

494

495   For Actual Damages (*"**infuriated, angry, upset and felt an injustice had been done**"* )

496   that needs to be rectified, in violation of the ECOA, FAVORS is suing SYNCHRONY

497   BANK for immediate instatement of the $600.00 *"CareCredit"* card to assist him with

498   the purchase of the glasses waiting at the store for pick up and payment.   Approved by

499   SYNCHRONY BANK, with no annual fee.

500

501   ***b) Punitive Damages***

502   A more significant incentive for compliance, however, is found in <u>15 U.S.C.S. 1691e</u>(b)

503   which provides that any creditor who fails to comply with any requirement imposed

504   under this subchapter shall be liable to the aggrieved applicant for punitive damages in an

505   amount not greater than ***$10,000*** except that in the case of a class action the total

506   recovery under this subsection shall not exceed the lesser of ***$500,000*** or one per centum

507   of the net worth of the creditor. The statute directs the court in determining punitive

508   damages to consider, among other relevant factors, the amount of any actual damages

509   awarded, the frequency and persistence of failures of compliance by the creditor, the

510   resources of the creditor, the number of persons adversely affected, and the extent to

511   which the creditor's failure of compliance was intentional. Here, FAVORS is entitled to /

512   suing for ***$10,000*** maximum amount for *Punitive Damages.*

513

514   Here, FAVORS is suing SYNCHRONY BANK for ***$10.000*** maximum amount for

515   *Punitive Damages* resulting from "***intentional, wanton and oppressive reckless***

516   ***disregard for the violation of FAVORS' civil rights, resulting in FAVORS being***

517   ***infuriated, angry, upset and felt an injustice had been done***" that needs to be rectified.

518

519   ***SETTLEMENT OFFER***

520   However, FAVORS is willing to settle out of court now in exchange for an immediate

521   cash payment of ***$1,000*** overnight express mail. The reasons FAVORS wanted, needed,

522   and applied for/the second credit card would be better compensated for that needs to be

523   rectified.

524

525   By this *Settlement Offer* the case will remain confidentially sealed.   Defendant   can

526   accept this settlement offer by immediately sign the Confidential Agreement they

527   received, and Motion to Voluntarily Dismiss The Case With Prejudice by FAVORS, and

528   send Plaintiff a copy with the settlement check by overnight express.

529                                     Respectfully Submitted,

Date: <u>June 20, 2019</u>        Signature, *Joseph Favors*

                                Plaintiff, Joseph A. FAVORS.
                                100 Freeman Drive
                                St. Peter, Minnesota
                                      55767

                                Phone: (218) 351-1900, Ext. 79327.
                                  (Message only)